UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COREINE S. PITTENGER,

      Plaintiff                         Civil Action No. 17-13675

v.                                     HON.  AVERN COHN
                                      U.S. District Judge
                                      HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL           U.S. Magistrate Judge
SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Coreine S. Pittenger ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under Title II of the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Plaintiff's motion for summary judgment [Docket #12] be held in abeyance and that the case be REMANDED under the sixth sentence of § 405(g) for review of the evidence not considered by the Administrative Law Judge.[1]  I recommend that Defendant's

---

[1] Under 42 U.S.C. § 405(g), a "Sentence Six" remand (in which the district court retains jurisdiction) "does not attach to any substantive ruling but merely remands the matter for further review in light of newly discovered evidence which is to be considered by the administrative law judge and therefore does not constitute a 'judgment' from which appeal can be taken." *Melkonyan v. Sullivan*, 501 U.S. 89, 97–99, 111 S.Ct. 2157, 2163, 115

motion for summary judgment [Docket #13] be DENIED.

## I. PROCEDURAL HISTORY

On June 9, 2015, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability as of May 4, 2014 (Tr. 142). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on January 11, 2017 before Administrative Law Judge ("ALJ") Sarah Zimmerman (Tr. 31). Plaintiff, represented by attorney Clifford B. Walkon, testified, as did Vocational Expert Zachary Matthews (Tr. 37-48, 48-54). On April 4, 2017, ALJ Zimmerman found that Plaintiff was capable of performing her past relevant work as a deli cutter (Tr. 23). On October 5, 2017, the Appeals Council declined to review the ALJ's decision (Tr. 1-3). Plaintiff filed for judicial review of the final decision in this Court on November 13, 2017.

## II. BACKGROUND FACTS

Plaintiff, born January 15, 1963, was 54 when the ALJ issued her decision (Tr. 23, 142). She completed 12th grade and formerly worked as a deli clerk (Tr. 178). She alleges disability as a result of bilateral knee surgery, cervical spondylosis, a torn left rotator cuff,

---

L.Ed.2d 78 (1991). The reviewing court does not grant summary judgment, but merely remands for further review. *Id.* The court "may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. § 405(g)." *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir.1993). However, the court retains jurisdiction in a Sentence Six remand, and enters final judgment only "after post-remand agency proceedings have been completed and their results filed with the court." *Shalala v. Schaefer*, 509 U.S. 292, 297, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993); see also *Melkonyan*, 501 U.S. at 98.

hearing loss, and herniated discs of the lumbar and thoracic spine (Tr. 177).

### A.   Plaintiff's Testimony

Plaintiff offered the following testimony:

She had not obtained or looked for employment at any time subsequent to the May 4, 2014 alleged onset of disability (Tr. 37). Before ceasing work, she worked as a deli clerk at Kroger (Tr. 38). During her stint as a deli clerk, she also performed seasonal work as a landscaper which required lifting of up to 80 pounds (Tr. 38-40, 47).

Plaintiff was married (Tr. 40). She received medical coverage through the State (Tr. 40). She received food stamps (Tr. 40). She was unable to work due to both hearing problems in both ears and the inability to lift more than 15 pounds (Tr. 41). She was left-handed (Tr. 42). She stood 5' 4" and weighed 118 pounds (Tr. 46). She had undergone shoulder surgery once on the right and twice on the left (Tr. 41). The most recent left shoulder surgery, performed in November, 2016, did not improve her left upper extremity condition (Tr. 42). She wore a left arm sling at all times except while showering and engaged in physical therapy, used a left wrist brace at night, and wore a band for left tennis elbow (Tr. 42). She was unable to straighten her left arm or reach overhead (Tr. 42). Even prior to the recent surgery, Plaintiff experienced problems gripping small items (Tr. 43).

Plaintiff also experienced constant low back pain (Tr. 43). Treatment options included epidural injections and a permanent pain pump (Tr. 43). She had not undergone physical therapy for the back condition and coped with the pain by reclining twice each day

for up to 40 minutes (Tr. 44). She had been prescribed Norco for nighttime use (Tr. 44). She had undergone a total of 13 knee surgeries (Tr. 44). In recent months, her primary focus was getting her shoulder problems resolved (Tr. 45). She also experienced limitations in neck motion (Tr. 45). Plaintiff was unable to sit for more than 30 minutes, stand for 10, or walk for 15 before experiencing back and knee pain (Tr. 46).

*Following Plaintiff's testimony, the ALJ noted that she had not received physical therapy records created after the November, 2016 surgery* (Tr. 48). *The ALJ stated that she would hold the record open for two weeks or "10 business days" for submission of the therapy records (Tr. 48).*

### B. Medical Records[2]

#### 1. Treating Sources

January, 2014 x-rays of the left shoulder and right knee were negative for fracture (Tr. 257-258). In December, 2015, auditory testing showed "moderate" to "severe" hearing loss on the right and "severe" to "profound" on the left (Tr. 272). She was advised to use a right-sided hearing aid (Tr. 273).

A March, 2016 MRI of the left shoulder showed a "full-thickness tear" of the tendon with a partial undersurface tear of the distal infraspinatus tendon and a small joint effusion (Tr. 274). An MRI of the lumbar spine showed moderate to severe neural foramina

---

[2]

Plaintiff's argument for remand pertain to the failure to consider physical therapy records created subsequent to her November 15, 2016 left shoulder surgery. The present discussion is limited to treatment for the left shoulder and related conditions.

narrowing at L5-S1 and scoliosis  (Tr. 277-278, 312, 314).  The following month, Plaintiff

continued to report severe back pain (Tr. 305).   In October, 2016, Plaintiff sought a surgical

consultation for the left shoulder condition, noting only temporary relief from injections (Tr.

280, 294).      In November, 2016, Plaintiff underwent a left shoulder arthroscopy (Tr. 326-

327).

### 2.  Non-Treating Sources

In August, 2015, Ryan Gegg, D.O. performed a consultative examination on behalf

of the SSA (Tr. 261-265) noting Plaintiff's report of left shoulder weakness, lumbar strain,

right knee pain and weakness, and the inability to lift even eight pounds with the right arm

(Tr. 261).  Plaintiff reported difficulty performing personal care activity and was unable to

sit for more than 30 minutes, stand for 10, or walk for 15 (Tr. 261).  She exhibited a limited

range of dorsolumbar and cervical spine motion (Tr. 263).   She showed a significant

limitation in right knee motion (Tr. 265).  She showed  "noticeable" reduced muscle strength

of the left upper extremity (Tr. 265).  An x-ray of the left shoulder was negative for fracture

(Tr. 266).  An x-ray of the lumbosacral spine showed significant degenerative changes (Tr.

267).  She reported leg cramping while walking and joint and muscle aches (Tr. 269).

In December, 2015, B.D. Choi, M.D. performed a non-examining review of the

treating records on behalf of the SSA, finding that Plaintiff could lift 20 pounds occasionally

and 10 frequently; sit, stand, or walk for around six hours in an eight-hour workday; and push

and pull without limitation (Tr. 74).  Dr. Choi limited Plaintiff to occasional postural

activities (Tr. 74).  He found that she was limited to occasional overhead manipulation, and a reduced range of left shoulder motion with reduced hand grip (Tr. 75).  He found that she should avoid "even moderate exposure to hazards due to the hearing impairment (Tr. 76).

### 3.  Physical Therapy Records Not Reviewed by the ALJ

Plaintiff commenced physical therapy one month following the November, 2016 left shoulder surgery (Tr. 59).  She exhibited decreased mobility of the left shoulder, scapula, and upper arm and a decreased range of shoulder motion (Tr. 60).  On a scale of 1 to 10, she reported "4 to 5" pain on average but level "9" while dressing, performing self care activities, and sleeping (Tr. 60).  She reported difficulty dressing, lifting, carrying, reaching, and driving (Tr. 62-63).  Therapy goals included "holding onto" a steering wheel for up to 30 minutes and "gradually return[ing] to yard chores and summer job of landscaping per physician's release"  (Tr. 60).  Plaintiff exhibited a limited range of cervical spine and shoulder motion (Tr. 64).  She exhibited significantly reduced muscle strength of the left shoulder (Tr. 65).  Long-term goals included developing the ability to lift up to 10 pounds (Tr. 66).  Plaintiff reported intermittent left shoulder pain and limitation for the past two to three years prior to surgery and an exacerbation of pain starting in August, 2016 (Tr. 62).

### C.    Vocational Expert Testimony

VE Zachary Matthews classified Plaintiff's past relevant work as a "deli cutter slicer"

as unskilled and exertionally light (medium as performed) and landscape laborer as unskilled

and heavy[3] (Tr. 49, 236).   The ALJ then posed a set of limitations to the VE, describing a

hypothetical individual of Plaintiff's age, education, and work history:

> [T]his hypothetical individual is able [to] lift and/or carry up to 10 pounds
> frequently and up to 20 pounds occasionally, is able to stand and/or walk for
> up to six hours and sit for up to six hours during a normal eight-hour workday.
> Such a hypothetical individual may occasionally reach overhead with the
> dominant left upper extremity and may frequently handle and finger with the
> dominant left upper extremity.  The hypothetical individual may never be
> exposed to dangerous machinery or hazardous heights. [The] individual is able
> to tolerate moderate noise levels.   Could such a hypothetical individual
> perform any [of her] past jobs . . . either as actually performed or generally
> performed in the national economy? (Tr. 50).

The VE testified that the above limitations would allow for Plaintiff's past relevant

work as a deli cutter slicer (Tr. 50).  He also testified that the limitations would allow for the

unskilled, light work of an office clerk (179,000 positions in the national economy); counter

clerk (55,000); and record clerk (46,000) (Tr. 51).  He testified that if the same limitations

were amended to include only occasional handling, fingering, or reaching forward in the

---

[3]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds
at a time and occasionally lifting or carrying articles like docket files, ledgers, and small
tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50
pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and
that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with
frequent lifting or carrying of objects weighing up to 50 pounds.

dominant (left) upper extremity, the deli position, office clerk, and record clerk positions would be eliminated (Tr. 52-53). The VE stated that a limitation to occasional neck movement, combined with the original and amended hypothetical limitations would eliminate all competitive employment (Tr. 54).

### D.  The ALJ's Decision

Citing the medical records, the ALJ found that Plaintiff experienced the severe impairments of "scoliosis and degenerative disc disease of the lumbar spine, chondromalacia of the bilateral knees, impingement syndrome and torn rotator cuff of the left shoulder status post surgery, and bilateral sensorineural hearing loss" but that none of the conditions met or medically equaled an impairment found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 17-18). The ALJ found that the conditions of left-sided carpal tunnel syndrome ("CTS") and tinnitus were non-severe (Tr. 17). She found that Plaintiff retained the Residual Functional Capacity ("RFC") for light work with the following additional limitations:

> [S]he is able to lift and/or carry 10 pounds frequently and 20 pounds occasionally. The claimant is able to stand or/or walk for six hours during an eight-hour workday. She is able to sit for six hours during an eight-hour workday. The claimant is able to climb ramps and stairs occasionally, but she is never able to climb ladders, ropes, or scaffolds. She is able to balance, stoop, kneel, crouch, or crawl occasionally. The claimant is able to reach overhead with her dominant left upper extremity occasionally. She is able to handle and finger frequently with her left dominant upper extremity. The claimant must never be exposed to dangerous machinery or hazardous heights. She can tolerate work at a moderate noise level (Tr. 19).

Citing the VE's testimony, the ALJ found that Plaintiff could perform her past relevant work as a deli cutter and the unskilled, light work of an office clerk, counter clerk, and record clerk (Tr. 23, 50-51).

The ALJ discounted Plaintiff's allegations of greater limitation than that found in the RFC, stating that "[t]he record is devoid of indications regarding [her] left shoulder functioning subsequent to [the November, 2016] surgery save [her own] allegations" (Tr. 21).

### III.  STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less than a preponderance.   It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of

-9-

whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### Evidence Not Reviewed by the ALJ

Plaintiff's arguments for remand pertain exclusively to her upper extremity limitations resulting from long-standing left shoulder problems.  *Plaintiff's Brief,* 12-21, *Docket #12,* Pg ID 377.  In regard to her November 15, 2016 surgery for left shoulder rotator cuff tear and biceps tenotomy, she disputes the ALJ's statement that the"[t]he record is devoid of indications regarding the [] left shoulder functioning subsequent to surgery . . ." (Tr. 21).  Plaintiff notes that in fact, she timely submitted nine pages of December, 2016 physical therapy records detailing her condition and limitations within two weeks of the administrative hearing as requested by the ALJ.  *Id.*  (*citing* Tr. 48).

In response, Defendant argues that Plaintiff cannot establish that she submitted the physical therapy records prior to the administrative decision, noting that record shows that on January 16, 2017, Plaintiff submitted "representative correspondence" with nothing more. *Defendant's Brief,* 5, *Docket # 13,* Pg ID 395 (*citing* Tr. 57, 238).  Defendant argues further that even if the therapy records were timely submitted, they would not change the ALJ's determination that Plaintiff was capable of a significant range of exertionally light work.  *Id.* at 10-11.

In response to Defendant's motion, Plaintiff disputes Defendant's claim that the therapy records were not timely filed, pointing out that the records were submitted by bar code on January 13, 2017 and that a date stamp in the lower right hand corner shows that they

-11-

were acknowledged by the SSA on January 16, 2017. *Response*, 2, *Docket #14,* Pg Id 404.

Under the sixth sentence of § 405(g), a court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." To satisfy the "materiality" requirement for a "Sentence Six" remand, a claimant "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence" *Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 711 (6th Cir. 1988).

### 1. Plaintiff Has Shown Good Cause

Ordinarily in Sentence Six cases, a plaintiff must show good cause for the failure to submit the newly submitted evidence prior to the administrative decision. In contrast here, Plaintiff seeks to show that she timely submitted evidence that it was overlooked by the ALJ.

As a threshold matter, Defendant does not dispute that the ALJ did not consider the therapy records. Indeed, as noted above, the ALJ erroneously noted that the record was "devoid" of evidence post-dating the November, 2016 surgery which would support Plaintiff's claims of limitation (Tr. 21). At the January 11, 2017 hearing, the ALJ asked Plaintiff's counsel for medical and physical therapy records created subsequent to the surgery (Tr. 48). Plaintiff's counsel responded that he could provide the records in 10 business days (Tr. 48). Plaintiff notes that the SSA acknowledged receipt of the physical therapy records

-12-

on January 16, 2017.  *Plaintiff's Brief* at 12.

Although it is impossible to determine where the breakdown in communication occurred, Plaintiff cannot be faulted for the ALJ's failure to review the newer records. January 13, 2017 correspondence by Plaintiff's counsel addressed to SSA notes an enclosure of records dated December 19 to December 29, 2017 by McLaren Oxford Specialty ("McLaren") (Tr. 58).  The letter is followed by the nine pages of physical therapy records discussed above (Tr. 59-67).   On January 16, 2017 in a letter addressed directly to ALJ Zimmerman, Plaintiff's counsel notes that the physical therapy records had been submitted and requested that the record be closed (Tr. 237).  Counsel asked the ALJ to contact his office if she required further information (Tr. 237).  While the exhibit list attached to the ALJ's April 4, 2017 unfavorable decision indicates only that "representative correspondence" was received on January 16, 2017, Defendant does not dispute that the correspondence references submission of the therapy records three days earlier and counsel's request that the ALJ contact him if she requires further information (Tr. 28).  Even assuming that the actual therapy records never reached the administrative fact-finder, it is unclear why the SSA did not contact Plaintiff's counsel for clarification as to why they had not received the records referenced in the letter.

Further, contrary to Defendant's claim that the January 16, 2017 correspondence to ALJ Zimmerman "does not indicate whether the evidence was physical therapy notes," *Defendant's Brief* at fn 4, the correspondence states explicitly that the evidence was created

-13-

by McLaren for treatment from December 19 to December 29, 2017 (Tr. 237).  Defendant's argument that SSA staff working in Michigan would not know that records from McLaren Oxford Specialty were related to Plaintiff's health is wholly without merit.  A search of cases brought in this Court (under 42 U.S.C. § 405 alone) show that health providers under the "McLaren" umbrella were referenced 40 times.   Moreover, Plaintiff submitted a bar coded document showing that the records were submitted on January 13, 2017 and admitted by the SSA on January 16, 2017.  *Response, Exhibit A,* Pg. ID 407.[4]  Because Defendant has not refuted the exhibit attached to Plaintiff's response, I find that Plaintiff has established good cause for the absence of the newer evidence from the transcript at the time of administrative determination.[5]

### 2.  The Physical Therapy Records are Material to the ALJ's Determination

There is also reasonable probability that review of the newer records would lead to a different result.  First, the therapy records flatly contradict the ALJ's finding that "the record is devoid of indications" of left shoulder limitations following the November, 2016 surgery (Tr. 21).   Instead, the records state that Plaintiff experienced reduced muscle

---

[4]
One possible explanation for the failure to include these records would be that counsel's January 16, 2017 letter to "close the record" was admitted earlier in the day than the nine pages of physical therapy records.

[5]This would not be the first time the SSA misplaced files submitted by a claimant, followed by an erroneous statement in the administrative decision that the evidence had not been received.  *See Kushner v. CSS,* Case No. 17-10072, *Docket #26,*18, *R&R adopted, Docket #27,* January 9, 2019.

strength of the left shoulder and that one of her "long-term" goals was to be able to lift up

to 10 pounds (Tr. 65-66).  Because lifting 10 pounds was one of the Plaintiff's long-term

goals it can be inferred  that at the time of the therapy, she was unable to lift 10 pounds with

the left upper extremity[6]  (Tr. 66).  While Defendant argues that the physical therapy records

simply restate the claims of otherwise unsubstantiated pain and limitation, the records contain

no indication that Plaintiff was malingering or exaggerating her claims.  The March, 2016

MRI showing a "full-thickness tear" of the rotator cuff strongly supports the therapy

notations that Plaintiff had experienced severe left shoulder pain and limitation long before

the November, 2016 surgery (Tr. 62).

Second, the ALJ's finding of the absence of records post-dating the shoulder surgery

undermines other portions of the non-disability determination.   With nothing more, her

finding that Plaintiff exaggerated her other claims of physical problems appears to be based

in part on the erroneous findings regarding her post-surgery condition (Tr. 21, 23).  The

ALJ's adoption of Dr. Choi's 2015 non-examining "light work" opinion is particularly

dubious, given that he did not have benefit of the March, 2016 MRI showing significant

abnormalities of the left shoulder, November, 2016 surgery records, or the treating evidence

---

[6]

Although the VE testified that the job of counter clerk could be performed with one hand, the RFC for 20 pounds lifting on an occasional basis would require Plaintiff to lift up to 20 pounds with only her non-dominant hand (the equivalent of 40 pounds with both) up to one third of the work period to be capable of performing exertionally light work (Tr. 53). *See fn 3, above.*

-15-

of severe functional limitation following surgery (Tr. 23, 74).  "When an ALJ relies on a non-examining source who 'did not have the opportunity to review' later submitted medical evidence, especially when that evidence 'reflects ongoing treatment,' we generally require 'some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record.'" *Brooks v. Commissioner of Social Sec.*, 531 Fed.Appx. 636, 642 (6th Cir. August 6, 2013)(*citing Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)).  While the ALJ discussed the treating records up to the time of the November, 2016 surgery, the failure to review the most recent records cast doubt on the weight accorded the earlier, non-examining "light work" opinion.

Finally, the question of whether Plaintiff could perform her past relevant work at the light exertional level, perform a significant range of other light work, or was limited to sedentary work is particularly critical, given that a finding that she was restricted to unskilled, sedentary work would direct a disability finding.  Plaintiff, 54 at the time of the administrative decision, was categorized as an individual "closely approaching advanced age." 20 C.F.R. part 404, subpart P, App. 2, Rule 201.14. In the "closely approaching" age group (50 to 55), a finding that she was limited to exertionally sedentary, unskilled work would result in a disability finding. *Id.*

Because the unreviewed evidence is material to the non-disability determination and Plaintiff cannot be faulted for its omission from the records reviewed by the ALJ, she is entitled to a Sentence Six remand for consideration of the newer material.

## VI.  CONCLUSION

For the reasons stated above, I recommend that Plaintiff's motion for summary judgment [Docket #12] be held in abeyance and that the case be REMANDED under the sixth sentence of § 405(g) for review of the material not considered by the Administrative Law Judge.  I recommend that Defendant's motion for summary judgment [Docket #13]  be DENIED.

Any objections to this Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6ᵗʰ Cir.  1991); *United States v. Walters*, 638 F.2d 947 (6ᵗʰ Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6ᵗʰ Cir.  1991); and *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6ᵗʰ Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


                                        s/ R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE
Dated: January 22, 2019



<u>CERTIFICATE OF SERVICE</u>

        I hereby certify that a copy of the foregoing document was sent to parties of record on January 22, 2019, electronically and/or by U.S. mail.

                                        s/Carolyn M. Ciesla
                                        Case Manager to the
                                        Honorable R. Steven Whalen